UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JERMAINE D'SHANN DODD,

    Plaintiff,

    v.       CAUSE NO. 3:22-CV-322-DRL-MGG

INDIANA DEPARTMENT OF
CORRECTION *et al.*,

    Defendants.

OPINION AND ORDER

Jermaine D'Shann Dodd, a prisoner without a lawyer, filed an amended complaint. ECF 6. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On August 8, 2021, Mr. Dodd was incarcerated at the Indiana State Prison in the disciplinary segregation unit.[1] Lt. Lott approached his cell and told him he needed to get ready for recreation time outside. Lt. Lott cuffed Mr. Dodd's hands behind his back and began to search his person. Mr. Dodd claims Lt. Lott "fondled and squeezed" his penis

---

[1] He has since been transferred to the Miami Correctional Facility. ECF 7.

several times and inappropriately touched him. ECF 6 at 5. Lt. Lott asked him what was in his pants, and Mr. Dodd replied, "That's my penis, what are you on?" *Id*. Lt. Lott continued to fondle, grab, and squeeze Mr. Dodd's penis.

When he was done, they began to walk slowly down the hallway. Mr. Dodd stopped at another inmate's cell to see if he was also going outside. Lt. Lott questioned Mr. Dodd as to whether he still wanted to go to recreation. Before he had a chance to respond, Lt. Lott "started snatching and started pulling the plaintiff's left arm" to get him off the range. *Id*. at 6. Sgt. French then arrived and "tackled" Mr. Dodd from the inmate's cell "to and towards the front door of the D-Cell house's counselor's office door." *Id*. While this was occurring, Mr. Dodd "stood idle and calm" while Sgt. French held his right arm and Lt. Lott held his left arm. *Id*. As he was "calmly conversing" with the officers, Lt. Neal suddenly "tasered the plaintiff in the spinal cord" two to three times. *Id*. Mr. Dodd claims he was not resisting or breaking any prison rules when this occurred.

Mr. Dodd fell to the ground from the pain. As Sgt. Lewis, Sgt. French, and Lt. Neal stood over him, Lt. Lott lifted Mr. Dodd's shirt, pulled down his shorts and underwear, exposed his genitals, and began to search him. He asked Mr. Dodd, "Where is the knife at?" *Id*. at 8. Mr. Dodd replied, "That's my dick, what are you on man?!" *Id*. Instead of stopping, Lt. Lott continued to "yank[] and ravish[]" his private parts. *Id*. at 9. Mr. Dodd claims he felt ashamed and humiliated, especially because he had been previously sexually assaulted and because two of the guards standing over him—Sgt. Lewis and Sgt. French—were women. After the search revealed nothing, Lt. Lott pulled his shorts back up and stated, "Oh, I thought he had a knife." *Id*. Lt. Lott then walked away, but he

2

returned a few minutes later with a conduct report claiming he had found a knife under Mr. Dodd's body.

Lt. Neal and Sgt. French lifted Mr. Dodd off the floor and escorted him to medical. Once there, he was placed in a chair, and a nurse began to ask him questions. When he refused to reply, Sgt. French ordered him to do so. When he refused again, Sgt. French purposefully "stood on the plaintiff's Mr. Dodd's ankles and leg shackle restraints" and yelled at him. *Id*. at 12. Sgt. French weighed over 250 pounds and used her full "weight and aggression" to stand on him, which caused Mr. Dodd significant pain. *Id*. Lt. Neal had to order Sgt. French to get off Mr. Dodd. He has sued the four officers for compensatory and punitive damages.

Under the Eighth Amendment, prisoners cannot be subjected to cruel and unusual punishment. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994). "An unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012) (collecting cases). While recognizing that some limitations regarding necessary touching apply to prisoners, the court noted:

> [a] judgment of imprisonment strips a prisoner of that right to be let alone, and many other interests as well. Custodians must be able to handle, sometimes manhandle, their charges, if a building crammed with disgruntled people who disdain authority (that's how the prisoners came to be there, after all) is to be manageable. . . . . [However, s]exual offenses forcible or not are unlikely to cause so little harm as to be adjudged *de minimis*, that is, too trivial to justify the provision of a legal remedy. They tend rather to cause significant distress and often lasting psychological harm.

3

*Id*. at 643. Specifically, the plaintiff in *Washington* alleged that "while patting him down the guard spent five to seven seconds gratuitously fondling the plaintiff's testicles and penis through the plaintiff's clothing and then while strip searching him fondled his nude testicles for two or three seconds[.]" *Id*. at 642. He claimed he "complained vociferously to the defendant about the pat down and strip search while they were going on, to no avail," and that he suffered psychological harm as a result of the guard's "gratuitous and offensive invasion of his private space." *Id*. at 642, 644. The court found he had stated a claim because, "[w]e don't see how the defendant's conduct if correctly described by the plaintiff could be thought a proper incident of a pat down or search[.]" *Id*. at 644.

Here, Mr. Dodd alleges Lt. Lott inappropriately fondled, grabbed, and squeezed his penis multiple times during the search, even after Mr. Dodd informed him that what he was touching was his penis and not another object. Later, while Mr. Dodd was sprawled on the ground near unconsciousness after being hit with a TASER, Lt. Lott exposed Mr. Dodd's genitals to a group of male and female officers and proceeded to "yank" and "ravish" his penis in front of them. Mr. Dodd claims this caused him psychological harm. Giving Mr. Dodd the inferences to which he is entitled based on the language he has used to describe the incident, it can plausibly be inferred that Lt. Lott's actions were intended to humiliate Mr. Dodd or gratify his own sexual desire. Though later factfinding may reveal the search was both necessary and legitimate, at this early stage he will be allowed to proceed on an Eighth Amendment claim against Lt. Lott.

Mr. Dodd also claims he was subjected to excessive force. The "core requirement" of an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal citation omitted). Deference is given to prison officials when the use of force involves security measures taken to quell a disturbance because "significant risks to the safety of inmates and prison staff" can be involved. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the threat posed to the safety of staff and inmates, the amount of force used, and the extent of the injury suffered by the prisoner. *Hendrickson*, 589 F.3d at 890.

Here, Mr. Dodd claims Lt. Lott started "snatching and pulling" his arm while he was walking down the hallway to try and guide him off the range. He claims Sgt. French then tackled him "towards" the door, but he admits he remained standing and "calm" while this occurred and does not describe any sort of injuries suffered as a result of this use of force. These sparse allegations are insufficient to state a claim. *See e.g. Graham v. Connor*, 490 U.S. 386, 396 (1989) (applying the Fourth Amendment's objective reasonableness standard and noting that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the [Constitution].") (internal quotation marks and citation omitted); *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened

5

to her that *might* be redressed by the law.") (emphasis in original). That said, Mr. Dodd also alleges Lt. Neal applied a TASER several times in the back "out of the blue" while he was subdued, handcuffed, and calmly talking with the other officers and that Sgt. French—who weighed more than 250 pounds—purposefully and aggressively stood on his ankles, which were shackled, after he arrived at medical. Giving Mr. Dodd the inferences to which he is entitled at this stage, he has stated plausible excessive force claims against both Lt. Neal and Sgt. French.

Mr. Dodd generally alleges the officers who did not participate directly in the sexual assault or uses of excessive force failed to intervene to prevent those violations. "[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's right through the use of excessive force but fail to do so" may be held liable. *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citing *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). This is what has become known as a "failure to intervene" basis for a constitutional violation under the Eighth Amendment. *Fillmore v. Page*, 358 F.3d 496 506 (7th Cir. 2004). To prevail on such a claim, a plaintiff must establish that "the defendant[] had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (citation omitted).

Here, Mr. Dodd describes instances of force or alleged inappropriate behavior by the defendants that occurred abruptly within a matter of seconds without any warning. For instance, he claims Lt. Lott yanked down his pants and fondled him in front of the other officers while he was on the ground, but he admits this was done under the guise

6

of a search and that the other officers seemed bewildered by and uneasy with his abrupt actions. Similarly, he claims he was calmly talking with Lt. Lott and Sgt. French when Lt. Neal used a TASER in the back "out of the blue." He also alleges Sgt. French stepped on his leg shackles, but he admits Lt. Neal ordered her to stop. It cannot be plausibly inferred from these allegations that the defendants had a reasonable opportunity to prevent the violations or that they failed to reasonably intervene. Thus, these claims will be dismissed.

Additionally, Mr. Dodd sues Mrs. R. Bremon, the Prison Rape Elimination Reform Act (PREA)[2] investigator. He claims he sent Mrs. Bremon a request for interview regarding the incident on September 13, 2021. Mrs. Bremon responded on August 18, 2021, stating the matter was being referred to the internal investigations department. *See* ECF 6-1 at 53. He followed up with her several times, but Mr. Dodd claims she failed to adequately investigate it. He also filed multiple grievances but did not receive a satisfactory resolution. To the extent he is alleging a violation of PREA, he may not do so because PREA does not create a private right of action. *See Sims v. Doe*, No. 1:18-cv-2394-TWP-MPB, 2018 WL 4027632, 2 (S.D. Ind. Aug. 22, 2018) (collecting cases). Similarly, prison staff's failure to follow internal policies pertaining to PREA reports does not state a claim. *See, e.g., Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in

---

[2] The Prison Rape Elimination Act of 2003 (PREA), 34 U.S.C. § 30301 *et seq.*, provides for national standards for policies to reduce sexual violence in prison.

this case, departmental regulations and police practices."). Therefore, Mr. Dodd's allegations against Mrs. Bremon about his PREA report do not state a claim for relief.[3]

Mr. Dodd also alleges a lack of medical care from his TASER wounds. He claims he was taken to medical, but the nurse there failed to clean or bandage his wounds. When he was released from the infirmary about two weeks later, a different nurse tended to his wounds. He eventually received x-rays of his back, which revealed no acute abnormalities but showed mild degenerative changes. He also claims he failed to receive mental health treatment during this period. He admits he was taken to a mental health provider for an assessment, but he declined to participate. He filed a request for mental health care later that same day, explaining that he has not wanted to participate in the therapy session due to Lt. Lott's presence. On September 3, 2021, he filed another request and received a response several days later indicating he was being "regularly seen by mental health." ECF 6 at 21.

Inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability for claims of inadequate medical care under the Eighth Amendment, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In this case, Mr. Dodd has not sued anyone directly responsible for

---

[3] Nor do his allegations that his prison grievances were not properly considered. *See Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim.").

his medical care. Although he claims Lt. Lott was present during one of his mental health appointments, it cannot be plausibly inferred he was responsible for the lack of treatment, especially considering Mr. Dodd refused care and then later requested it via healthcare request form. He has not stated a plausible Eighth Amendment medical claim against any of the named defendants.[4] *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and defendants cannot be held liable for the misdeeds of other staff). Thus, these claims will be dismissed.[5]

Finally, Mr. Dodd claims the defendants are liable for assault/battery pursuant to Indiana Code 35-42-2-1(2)(F) and for sexual assault/battery pursuant to Indiana Code 35-42-4-8(A)(2). Title 35 pertains to criminal law and procedure, and Mr. Dodd lacks standing to pursue such claims. *See Ball v. City of Indianapolis*, 760 F.3d 636, 646 (7th Cir. 2014) (citing Ind. Code § 35–34–1–1(a) ("All prosecutions of crimes shall be brought in the

---

[4] To the extent he is seeking injunctive relief for current medical care, he may not do so against any of the defendants at the Indiana State Prison as he has since been transferred to the Miami Correctional Facility. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.").

[5] Mr. Dodd further claims he was taken to a segregation unit after being seen in medical and placed in a dirty cell without a mattress, water, or ventilation. However, he does not plausibly allege any of the named defendants knew about the condition of that cell or were responsible for his placement there. *See e.g. Mitchell*, 895 F.3d at 498. Twelve days later, he claims Lt. Lott escorted him to a different cell that had "some form of lasers stabbing the plaintiff in his eyes, face, body, and private parts [using] hot electrical transparent wires and electrical currents." ECF 6 at 18. These claims are factually frivolous and will be dismissed. 28 U.S.C. § 1915A(b)(1) requires dismissal of claims—without an evidentiary hearing—when the facts alleged in the complaint are "delusional" or "incredible." *Gladney v. Pendleton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002); *see also Holland v. City of Gary*, 503 Fed. Appx. 476, 477 (7th Cir. 2013) ("[A] dismissal for frivolousness under § 1915 (the IFP statute) does not require a judge to accept fantastic or delusional factual allegations.").

name of the state of Indiana.")). Moreover, to the extent he is attempting to bring his claims pursuant to civil tort law, the Indiana Tort Claims Act shields government employees from liability so long as the claim arises from acts performed within the scope of their employment. Ind. Code § 34-13-3-3; *see also Ball*, 760 F.3d at 645 ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."); *Reiner v. Dandurand*, 33 F.Supp.3d 1018, 1033 (N.D. Ind. 2014) ("If an alleged action is within the general scope of an individual's authority, it is authorized within the meaning of the Tort Claims Act, regardless of whether it was done negligently or with improper motive.") (quotation marks and citations omitted). Here, Mr. Dodd is clearly suing the officers for actions taken in the course of their official duties, which the Act does not permit.[6] Therefore, these claims will be dismissed.

For these reasons, the court:

(1) GRANTS Jermaine D'Shann Dodd leave to proceed against Lt. Lott in his individual capacity for compensatory and punitive damages for fondling and/or squeezing his penis on August 8, 2021, in order to humiliate Jermaine D'Shann Dodd or gratify his own sexual desires in violation of the Eighth Amendment;

(2) GRANTS Jermaine D'Shann Dodd leave to proceed against Lt. Neal in his

---

[6] To the extent he alleges they were acting outside the scope of their employment, state law battery tort claims against the officers based on the same intentional acts as those described in the Eighth Amendment claims would be redundant. Such claims would not alter Mr. Dodd's burden of proof or the recovery he might receive if he wins.

individual capacity for compensatory and punitive damages for subjecting him to excessive force when he tasered him on his back several times without warning on August 8, 2021, in violation of the Eighth Amendment;

(3) GRANTS Jermaine D'Shann Dodd leave to proceed against Sgt. French in her individual capacity for compensatory and punitive damages for subjecting him to excessive force when she purposefully stepped on his ankle shackles on August 8, 2021, in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES the Indiana Department of Correction, Sgt. Lewis, and PREA Investigator R. Bremon;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lt. Lott, Lt. Neal, and Sgt. French at the Indiana Department of Correction, with a copy of this order and the amended complaint (ECF 6);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Lt. Lott, Lt. Neal, and Sgt. French to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

January 3, 2023                                          *s/ Damon R. Leichty*
                                                         Judge, United States District Court